KAPIOLANI COMMERCIAL CENTER, a Hawaii limited partnership, Plaintiff-Appellant/Cross-Appellee, *v.* A&S PARTNERSHIP, a Hawaii limited partnership, and ALIOTO FISH COMPANY, LTD., a California corporation, Defendants-Appellees/Cross-Appellants, and FRANK ALIOTO and NUNZIO ALIOTO, Defendants-Appellees/Cross-Appellees, and A&S PARTNERSHIP, a Hawaii limited partnership, Third-Party Plaintiff-Appellee/Cross-Appellant, *v.* ERNEST SCHWARTZ, Third-Party Defendant-Appellant/Cross-Appellee, and JOHN DOES 1-10, DOE CORPORATIONS 1-10, and DOE PARTNERSHIPS 1-10, Third-Party Defendants

NO. 10708

(CIVIL NO. 61641)

AUGUST 1, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY PADGETT, J.

Both sides appeal from a judgment entered upon a special verdict returned by a jury.

By a lease dated March 9, 1977, appellant Kapiolani Commercial Center, a Hawaii limited partnership, leased certain premises at 1580 Makaloa Street, Honolulu, Hawaii, to A&S Partnership, a Hawaii limited partnership, for operation as a restaurant.

The lease provided:

27. *ASSIGNMENT AND SUBLETTING.*

Tenant shall not assign this lease or any interest hereunder, nor shall any assignment hereof by operation of law be made, and shall not subrent or sublet the Premises or any portion thereof, and shall not permit the use or occupancy of the Premises by other than Tenant and the agents and employees of Tenant, without first obtaining the written consent of Landlord. Such consent of Landlord in one instance shall not prevent or waive the application of this Paragraph 27 in a subsequent instance.

. . . . .

38. *CONSENTS AND APPROVALS.*

Whenever the consent or approval of Landlord is required by any provision of this agreement such consent or approval shall not be capriciously or unreasonably withheld and the payment of any consideration therefor shall not be required, other than architects' fees when review of plans is required; provided, however, that Landlord may without further reason withhold approval of any altera-

tions, additions and improvements if the plans and specifications therefor are not acceptable to the architect or engineer (if any) retained by Landlord to review the same.

The restaurant was unsuccessful and in September of 1980, the lessee received a DROA from a prospective assignee of the lease. In the fall of 1981, the lessee vacated the restaurant premises. By that time, the lessor, lessee and other parties were deeply engaged in litigation over the lease. The record below encompasses 17 volumes. Eventually, in January of 1985, the case was tried before a jury.

The special verdict form returned by the jury was as follows:

The jury must answer all of the questions, unless otherwise indicated. To understand what issues are being submitted to you, you may wish to read over the entire Special Verdict before proceeding to answer. Answer the questions in numerical order. Follow all directions carefully. *Each* answer requires the agreement of at least ten (10) jurors; however, the *same* ten (10) jurors need *not* agree on each answer. If you do not understand any question or if you wish to communicate with the Court on any other subject, you must do so in writing through the Bailiff.

1.  Did the A&S Partnership/Alioto Fish Company breach the contract?

    YES ___X___          NO _____

2.  If your answer to Question 1 was "yes", what is the amount of actual damages, if any, suffered by Kapiolani Commercial Center as a result of that breach of contract.

    AMOUNT       $ 369,053

3.  Were A&S Partnership/Alioto Fish Company negligent?

    YES _____          NO ___X___

4.  If your answer to Question 3 was "yes", what is the amount of actual damages, if any, suffered by Kapiolani Commercial Center as a result of that negligence?

    *Do not include any amounts that you may have already awarded for breach of contract in Question 2.*

    AMOUNT       $_____

5.  Did Kapiolani Commercial Center/Ernest Schwartz breach the contract?

    YES _____          NO ___X___

6.  If your answer to Question 5 was "yes," what is the amount of actual damages, if any, suffered by A&S Partnership as a result of

that breach of contract.

AMOUNT    $_____

7.   Were Kapiolani Commercial Center/Ernest Schwartz negligent?

YES ____X____    NO _____

8.   If your answer to Question 7 was "yes", what is the amount of actual damages, if any[,] suffered by A&S Partnership as a result of that negligence.

*Do not include any amounts that you may have already awarded for breach of contract in Question 6.*

AMOUNT    $ 530,000

9.   If the amount of actual damages in your answer to Question No. 6 and/or No. 8, is more than zero, please answer this question. Did Kapiolani Commercial Center/Ernest Schwartz act wantonly, willfully or recklessly?

YES ____X____    NO _____

10.   If your answer to Question 9 was "yes", then what amount[,] if any, of punitive or exemplary damages do you assess against Kapiolani Commercial Center/Ernest Schwartz by way of punishment and for the sake of example.

*Do not include any amount that you have already awarded for breach of contract or negligence in answer to Question No. 6 or Question No. 8.*

AMOUNT    $ 500,000

Once you have completed this verdict form in accordance with the instructions, please have the foreperson date and sign this document. Thereafter, please call for the Bailiff and inform him that your verdict has been reached.

DATED:   Honolulu, Hawaii, 06 FEB 1985.

/s/ David Perreira, Jr.,
Foreperson

The central fact issue at trial was whether the lessor, in violation of the express provision of the lease, unreasonably withheld consent to the proposed assignment of the lease by the lessee.

Here, the jury found that the lessee breached the lease and was liable for damages. It also found that the lessor did not breach the lease. But it went on to find that the lessor was negligent and that that negligence caused damages measured by the exact amount of the lessee's loss as a

result of the fact that the assignment did not go through, a measure of damages permitted to the lessee where there has been a breach of covenant by the lessor. RESTATEMENT (SECOND) OF PROPERTY § 10.2(1) at p. 338 (1976).

The appellant lessor argues that the jury's answers to the verdict were inconsistent. Cross-appellant lessee contends that the answers can be reconciled. Given the law, we agree with the appellant lessor.

It is obvious from the answers returned that the jury was confused and rendered inconsistent verdicts since it appears from the answers that the jury found that consent to the assignment both was and was not unreasonably withheld. We are here dealing with a claim of a breach of an express covenant in the lease. It was error to submit the issue of unreasonable withholding of consent to the jury on the alternative theory of negligence. That submission resulted in the inconsistent and irreconcilable verdict which must be set aside and a new trial ordered. *Territory v. Thompson*, 26 Haw. 181 (1921); *Vieau v. City and County*, 3 Haw. App. 492, 653 P.2d 1161 (1982).

If consent was unreasonably withheld by the lessor, then, the lessee had a right to terminate the lease. As has been said:

If the lease specifically provides that the landlord or the tenant will not withhold his consent to a proposed transfer by the other party unreasonably, the other party has options not available if such obligation is merely imposed by operation of law. Such specific provision in the lease is a promise and upon its breach the other party will be entitled to all the remedies available for a breach of a promise . . . including the right to terminate the lease. . . .

RESTATEMENT (SECOND) OF PROPERTY, *supra*, § 15.2 comment h, at p. 106. Since we do not know whether or not the damages returned against the lessee included rentals for periods after the presumed termination by the lessee by the abandonment of the premises, the verdict returned below against cross-appellant lessee is equally infected with the inconsistency and a complete new trial must be held.

The ordering of a new trial disposes of all claims of error by appellant lessor. Our determination that there must be a new trial also disposes of cross-appellant lessee's point 4 on the cross-appeal. With respect to cross-appeal points 1, 2, 3 and 5, cross-appellant, in violation of our 35-page limitation set forth in HRAP Rule 28(a), attempts to incorporate by reference in its brief, the arguments made before the trial court. Since this is in violation of our rules, we will disregard those

points. As to points 6 through 13, they are rendered moot by the fact that we have ordered a new trial and any contentions therewith will have to be handled by the trial court in connection with the new trial and subsequent judgment.

Commercial cases of this nature are inherently difficult and confusing for juries. The court below should have vigorously employed the powers given it under HRCP Rule 16 to simplify and clarify the case so that the possibility of jury confusion would be lessened. On remand, we strongly suggest that the court below and counsel for the parties make a vigorous and cooperative effort toward the simplification of the issues presented to the jury pursuant to HRCP Rule 16. Reversed and remanded for further proceedings consistent herewith.

*William F. Quinn* (*Lisa Woods Munger* and *Bruce L. Lamon* with him on the briefs; *Goodsill Anderson Quinn & Stifel* of counsel) for appellants Kapiolani Commercial Center and Ernest Schwartz.

*Renton L.K. Nip* (*John B. Shimizu* with him on the briefs; *Foley, Maehara, Judge, Choi, Nip & Okamura* of counsel) for cross-appellants A&S Partnership and Alioto Fish Company.